For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**Shirley B. PREBOLA, N.K.A. Shirley D. Begy, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Docket No. 05–6953–ag.**

United States Court of Appeals, Second Circuit.

Submitted: March 8, 2007.

Decided: March 27, 2007.

Gerald W. Dibble, Dibble, Miller & Burger, P.C., Rochester, NY, for Petitioner–Appellant.

Richard Farber and Regina S. Moriarty, Attorneys, Tax Division, United States Department of Justice (Eileen J. O'Connor, Assistant Attorney General, on the brief), Washington, DC, for Respondent–Appellee.

Before MESKILL, WINTER, and STRAUB, Circuit Judges.

PER CURIAM:

The issue in this case is whether lump-sum proceeds received from a sale of future interest in lottery payments should be

characterized for income tax purposes as a capital gain or as ordinary income. The United States Courts of Appeals for the Third, Ninth, and Tenth Circuits, along with the United States Tax Court in numerous rulings, have all held that such proceeds are properly characterized as ordinary income. *See Lattera v. C.I.R.*, 437 F.3d 399 (3d Cir.2006); *United States v. Maginnis*, 356 F.3d 1179 (9th Cir.2004); *Watkins v. C.I.R.*, 447 F.3d 1269, 1271 (10th Cir.2006); *see, e.g., Womack v. C.I.R.*, T.C. Memo 2006–240 (Nov. 7, 2006); *Simpson v. C.I.R.*, 85 T.C.M. (CCH) 1421 (2003); *Davis v. C.I.R.*, 119 T.C. 1, 2002 WL 1446631 (2002). We have no difficulty reaching the same conclusion.

Petitioner Shirley D. Begy won $17.5 million in the New York State Lottery in 1997, payable in 26 annual installments. After receiving her first three installment payments—which she reported on her income tax returns as ordinary income— Begy sold her interest in the remaining payments to a third party for a lump sum of $7.1 million. On her 2000 income tax return, Begy reported the $7.1 million as a long-term capital gain. The Internal Revenue Service disagreed with this treatment and issued a notice of deficiency for $1.31 million on the ground that the proceeds from the sale should have been reported as ordinary income. The Tax Court agreed with the I.R.S.'s position. *See Prebola v. C.I.R.*, 90 T.C.M. (CCH) 485, 2005 WL 3068344 (T.C. Nov. 8, 2005).

The Tax Court reasoned that the asset Begy sold—the right to future lottery installment payments—did not constitute a "capital asset" within the meaning of Section 1221 of the Internal Revenue Code. *See id.* at *2. We agree. Although the tax code defines "capital asset" broadly as "property held by the taxpayer," I.R.C. § 1221(a), the Supreme Court has limited the scope of this provision in contexts, such as here, where the "property" at is-

sue is a right to receive ordinary income payments in the future. *See, e.g., C.I.R. v. P.G. Lake, Inc.*, 356 U.S. 260, 266, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958) (holding that capital gains treatment was inappropriate where "[t]he substance of what was assigned was the right to receive future income" and the "substance of what was received was the present value of income which the recipient would otherwise obtain in the future").

Under what has become known as the "substitute-for-ordinary-income doctrine," the Supreme Court and the courts of appeals have held that where lump-sum payments are received in exchange "for what would otherwise be received at a future time as ordinary income," the payments should be treated as ordinary income, not capital gains. *Id.* at 265, 78 S.Ct. 691; *see also United States v. Midland–Ross Corp.*, 381 U.S. 54, 57–58, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1965) (treating gain on sale of non-interest-bearing notes as equivalent of interest and thus as ordinary income); *Hort v. C.I.R.*, 313 U.S. 28, 31, 61 S.Ct. 757, 85 L.Ed. 1168 (1941) (lump sum paid for cancellation of rental payments owed under fifteen-year lease treated as ordinary income); *C.I.R. v. Ferrer*, 304 F.2d 125, 131, 134 (2d Cir.1962) (right to receive percentage of film proceeds treated as ordinary income); *Holt v. C.I.R.*, 303 F.2d 687, 690–91 (9th Cir.1962) (lump sum received in exchange for future movie proceeds deemed ordinary income); *Dyer v. C.I.R.*, 294 F.2d 123, 126 (10th Cir.1961) (lump sum received for mineral leasehold payments held to be ordinary income); *but see McAllister v. C.I.R.*, 157 F.2d 235 (2d Cir.1946) (in a case decided before *P.G. Lake*, holding that a widow could treat as a capital gain the lump-sum payment she received when she was forced to sell her rights to future payments from a life estate in a trust).

As the Tenth Circuit noted, the "basic lesson" from this line of cases is that "when a party exchanges for a lump sum the right to receive in the future ordinary income already earned or obtained, the amount received serves as a substitute for the ordinary income the party had the right to receive over time. The lump sum is accordingly treated as ordinary income for taxation purposes." *Watkins,* 447 F.3d at 1272. That is exactly what happened here: the $7.1 million Begy received was payment for a future stream of ordinary income that she had already earned the right to receive. Thus, just as her annual installments were treated as ordinary income, so should receiving a lump sum in exchange for the right to receive those installments.[1]

We recognize that there are contexts in which the substitute-for-ordinary-income doctrine does not or should not apply. *See Maginnis,* 356 F.3d at 1182 ("an approach that [takes] the doctrine too far ... would hold that no sale of an asset that produces revenue, even common stock, could be taxed as a capital gain"); *Lattera,* 437 F.3d at 404 ("in theory, all capital assets are substitutes for ordinary income"); Thomas G. Sinclair, Comment, *Limiting the Substitute–for–Ordinary–Income Doctrine: An Analysis Through Its Most Recent Application Involving the Sale of Future Lottery Rights,* 56 S.C. L.Rev. 387, 421–22 (2004). But whatever the doctrine's outer limits, this case falls squarely within them, as there is no question that Begy received her lump sum payment in exchange for the right to be paid income that had already been earned and that was, until the sale, being taxed as ordinary income. In other words, the $7.1 million is

a clear substitute for the remainder of the $17.5 million in lottery payments she was to receive in the future.

Accordingly, we AFFIRM the decision of the Tax Court.

---

**1.** Begy contends that her lump-sum payment should be treated as a capital gain because its value was determined, in part, by market forces outside of her control such as variable interest rates. By that logic, however, every right to a future income stream would have to be considered a capital asset because the market value of such rights are invariably dependent on the fluctuation of interest rates over time, thus rendering the substitute-for-ordinary-income doctrine a nullity.